USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIO MARTINEZ AGUILAR, and MANUEL JESUS ARIZAGA, individually and on behalf of all others similarly situated,

        Plaintiffs,

 -against-

NEW DAIRYDEL, INC., FOUR CORNERS FOODS INC., and DKLEE REALTY CORP. D/B/A BAGEL PLUS DELI, and MYEONG GU KIM, CHARLES LEE, SEUNGKI J. LEE a/k/a DANIEL LEE a/k/a DADNIEL LEE, and KIMBERLY SEUNG HEE LEE, as individuals,

        Defendants.

No. 22 Civ. 3700 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

  Plaintiffs Patricio Martinez Aguilar ("Plaintiff Aguilar") and Manuel Jesus Arizaga ("Plaintiff Arizaga") bring this action, on behalf of themselves and others similarly situated, against New Dairydel, Inc., Four Corners Foods Inc., DKLEE Realty Corp. ("Corporate Defendants") and Myeong Gu Kim, Charles Lee, Seungki J. Lee, and Kimberly Seung Hee Lee ("Individual Defendants") (collectively, "Defendants"). Plaintiffs list five counts in the Complaint: (1) violation of the overtime provision of the Fair Labor Standards Act ("FLSA"); (2) violation of the overtime provision of New York Labor Law ("NYLL"); (3) violation of the spread of hours provision of NYLL; (4) violation of the notice and recordkeeping provision of NYLL; and (5) violation of the wage statement provision of NYLL. (*See* Complaint or "Compl.", ECF. No. 1.)

  Presently pending before the Court is Defendants New Dairydel, Inc. ("Dairydel") and Myeong Gu Kim's ("Defendant Kim") (collectively, "Moving Defendants") motion to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(6) (the "Motion"). (ECF No.

27.) For the following reasons, Moving Defendants' Motion is GRANTED, and Plaintiffs' claims are dismissed, without prejudice.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to Plaintiffs for the purposes of this motion.

Plaintiff Aguilar was employed by the Defendants as a food preparer, cook, and grill worker from in or around November 2018 through March 2021. (Compl. ¶ 90.) He regularly worked twelve hours per day and six days per week, approximately seventy-two or more hours per week in total. (Compl. ¶ 91.) During this period, Plaintiff Aguilar was continuously paid $13.25 per hour at straight time for all hours worked. (*Id.* ¶¶ 92, 95.) Despite regularly working more than forty hours per week, Plaintiff Aguilar did not receive overtime pay at a rate of time and a half, which he argues is required by the FLSA, the NYLL, and related state regulations. (*Id.* ¶¶ 96, 129, 135.)

Additionally, the Defendants failed to pay Plaintiff Aguilar an extra hour at the legally prescribed minimum wage for each day he worked in excess of ten hours, violating the spread of hours provisions in the NYLL and related state regulations. (*Id.* ¶ 97.) The Defendants also failed to provide Plaintiff Aguilar with any paystubs, wage statements, or written documentation detailing his hours worked or cash received. (*Id.* ¶¶ 93, 144.) Moreover, Defendants did not implement a system to track the hours worked by employees. (*Id.* ¶¶ 94, 141.)

Similarly, Plaintiff Arizaga worked for the Defendants as a food preparer, cook, and grill worker from around October 2015 through June 2018. (*Id.* ¶ 98.) During this period, Plaintiff Arizaga regularly worked approximately eleven hours per day, six or seven days per week, totaling an average of seventy-one hours per week. (*Id.* ¶ 99.) However, Defendants continuously paid Plaintiff Arizaga a flat weekly lump-sum wage of approximately $700.00, regardless of the number

of hours worked. (*Id.* ¶¶ 100, 104.) The flat weekly pay was not intended to cover all of Plaintiff Arizaga's hours worked, including overtime hours, nor did Plaintiff enter into any agreement indicating otherwise. (*Id.* ¶ 101.) Accordingly, Plaintiff Arizaga regularly worked overtime without receiving time and a half pay, which he argues is required by the FLSA, NYLL, and related state regulations. (*Id.* ¶ 105.) Plaintiff Arizaga also did not receive an extra hour of pay at the minimum wage for each day worked over ten hours, which he argues is required under state law. (*Id.* ¶ 106.) The Defendants paid Plaintiff Arizaga in cash without providing any paystubs, wage statements, or written documentation of his hours worked or cash received, and they also failed to implement a system for tracking employee hours. (*Id.* ¶¶ 102–103.)

Defendants employed ten other employees in positions similar to the Plaintiffs ("collective action members") and allegedly applied the same illegal policies and practices to those employees. (*Id.* ¶¶ 114–115.) Plaintiffs allege that the collective action members regularly worked over forty hours per week, but that Defendants failed to provide them with overtime compensation as required under the FLSA, the NYLL, and the New York Codes, Rules, and Regulations ("NYCRR"). (*Id.* ¶¶ 116–120.)

Plaintiffs commenced the instant lawsuit against the Defendants on May 6, 2022. (*See* Compl.) On September 20, 2022, the Court granted the Moving Defendants leave to file the instant Motion.[1] (ECF No. 24.) The Motion was fully briefed as of January 4, 2023. (ECF No. 27.)

## DISCUSSION

**I.   Plaintiff Arizaga's federal claim is barred by the statute of limitations**

---

[1] The non-Moving Defendants filed an Answer to the Complaint on June 20, 2022. (ECF No. 17.)

Moving Defendants contend that Plaintiff Arizaga's FLSA claim is barred by the three-year statute of limitations period. (ECF No. 29 ("Def. Mem.") at 11.) Because Plaintiff Arizaga's employment, as alleged, ended nearly four years prior to Plaintiffs' commencement of this action, the Court agrees.

Under the FLSA, a plaintiff may file a claim two years after the cause of action accrues or three years if the violation is willful. *See* 29 U.S.C. § 255(a). A violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Even assuming that Plaintiff Arizaga has sufficiently alleged a willful violation of the FLSA by the Moving Defendants, the Complaint alleges that Plaintiff stopped being an employee in or around June 2018. (*See* Compl. ¶¶ 8, 98.) Plaintiff Arizaga states no facts alleging that Plaintiff Arizaga experienced harm after he left his employment. Thus, the three-year statute of limitations expired in June 2021. But Plaintiffs did not commence this action until almost another year later, on May 6, 2022.  As a result, Plaintiff's Arizaga's FLSA claim is clearly time-barred.

The Court accordingly dismisses Plaintiff Arizaga's FLSA claim against Dairydel and Defendant Kim[2] without prejudice.[3]

## II.  Plaintiff Aguilar's federal claim against Defendant Kim and Dairydel

Upon finding the claims of Plaintiff Arizaga barred against the Moving Defendants, the Court will now proceed to examine the federal claim raised by Plaintiff Aguilar against the Moving

---

[2] The Court does not address here whether Plaintiff Arizaga's federal claim is barred by the statute of limitations as to the other non-Moving Defendants because the non-Moving Defendants have not filed 12(b)(6) motions.

[3] For avoidance of doubt, the Court notes that the various New York State executive orders issued throughout the COVID-19 pandemic did not purport to toll time periods prescribed by federal law, including in FLSA cases. *See, Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21 Civ. 4951 (LJL), 2022 WL 624451, at *5 (S.D.N.Y. Mar. 2, 2022) (finding that the executive orders did not apply to plaintiff's FLSA claim). The Court thus need not consider COVID-19 related tolling in the present case.

Defendants. The Moving Defendants argue that they are not "employers" for purposes of the FLSA. For the reasons articulated below, the Court agrees.

A. Defendant Kim

1. *Plaintiff Aguilar fails to establish Defendant Kim as his employer under the economic realities test*

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized that is an expansive definition with 'striking breadth.'" *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 938-39 (S.D.N.Y. 2013) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). The "overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted). In order for an individual defendant to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function . . . . Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment*.*" *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Id*. at 104 (citation and internal quotation marks omitted).

In order to determine whether an individual defendant is an employer under the FLSA, courts have applied the Second Circuit's *economic realities* test, which considers whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735

5

F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

"Formal control does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Hart*, 967 F. Supp. 2d at 939) (citing *Herman*, 172 F.3d at 139) (internal quotation marks omitted). However, it does "require some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Irizarry*, 722 F.3d at 109. An allegation that an "individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Id*. (discussing *Herman*, 172 F.3d at 139).

Here, Plaintiff Aguilar fails to raise allegations adequate to support any of the four factors set forth in the *economic realities* test. Instead, conclusory statements from Plaintiff's Complaint, when strung together, merely mirror these factors. *See,* e.g., Compl. ¶ 44 ("MYEONG GU KIM has the power to hire and fire the employees at Corporate Defendants, establish determine, and pay their wages, set their work schedule, and maintain their employment records."); *id*. ¶ 37 ("MYEONG GU KIM would instruct the employees of Corporate Defendants including Plaintiffs how to perform their jobs; directing Plaintiffs where, when and how to perform their job duties responsibilities and functions each day."); *see also id*. ¶¶ 35–36, 38–41, 43. Such threadbare recitals of the elements to establish employer liability do not suffice to state a plausible claim for relief. *See Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 585 (S.D.N.Y. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Peng Bai v. Fu Xing Zhou*, No. 13 Civ.

6

05790 (ILG) (SMG), 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) ("[Plaintiff's] allegations that [defendant] had the power to hire, fire, set wages, set work conditions, and maintain employment records are conclusory and inadequate to establish that [defendant] was an employer, as several courts in this circuit have held."); *Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *7 (S.D.N.Y. Oct.8, 2013) (finding that plaintiffs failed to plead a claim because they alleged no "specific facts, aside from the elements of the 'economic reality test.'").

Plaintiff further attributes—in connection to the third *economic realities* test factor—the decision-making power over employee wages to all Defendants, without specifically alleging Defendant Kim's individual role, if any, in setting those conditions. (*See* Compl. ¶ 15 ("*Defendants* would regularly employ approximately ten or more other employees and kitchen staff workers […], like the Plaintiffs, whom were also associated with *Corporate Defendants'* payroll." (emphasis added)); *id*. ¶ 92 ("Plaintiff Aguilar was paid by *Defendants* approximately $13.25 per hour at straight time.") (emphasis added)). Plaintiff alleges no facts other than Defendant Kim's status as owner and authorized agent of the Corporate Defendants to support the conclusory allegation that Defendant Kim was "the individual" responsible for making decisions concerning employee wage.

The Court agrees with Defendants that Plaintiff's Complaint uses nearly identical allegations to assert that three other individual defendants are also purportedly "the individual" in charge of the aforementioned responsibilities. Without more, the Court is unable to ascertain whether or to what extent Defendant Kim, as an Individual Defendant, exercised control over Plaintiff Aguilar's pay as an "employer." *See, e.g.*, *Weng v. HungryPanda US, Inc.*, No. 19 Civ. 11882 (KPF), 2022 WL 292799, at **6–7 (S.D.N.Y. Jan. 31, 2022) (finding employer status not

met where, *inter alia*, a delivery driver failed to specify which individual defendant exercised control over his work environment); *see also Xue Lian Lin v. Comp. Health Mgmt., Inc.,* No. 08 Civ. 6519 (PKC), 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009) (collecting cases dismissing FLSA claims against individual defendants predicated on conclusory allegations based on title alone).

Moreover, the fourth *economic realities* test factor, maintenance of employment records, weighs against finding that Defendant Kim employed Plaintiff Aguilar. Plaintiff Aguilar alleges that he was paid in cash and "never with any accompanying paystub, wage statement, nor any other written documentation delineating his hours worked each week." (Compl. ¶ 93.) Plaintiff directly concedes that he was "not required to . . . track, record, or clock his hours" as "Defendants did not maintain any such system for tracking employees' hours of work." (*Id*. ¶ 94.) Hence this is not a case where an employer "signs off on" time sheets completed by each plaintiff, "verif[ies] the number of hours worked" by each plaintiff and then "provides records of the hours worked" to the plaintiff's employer who uses the records to compensate the plaintiff. *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir.2008).

To be sure, courts have found that non-maintenance of such records does not definitively negate the existence of an employment relationship under the FLSA. *See, c.f., Hong v. Mito Asian Fusion, Inc.*, No. 19-CV-3149, 2021 WL 5409267, at *5 (E.D.N.Y. Aug. 9, 2021) (holding that because plaintiff satisfied the three other elements of the *economic realities* test, an absence of recordkeeping did not undermine plaintiff's claim regarding the defendant's employer status). Nonetheless, the Court notes that the "economic reality" of a relationship "must be made on a case-by-case basis in light of the totality of the circumstances." *Timberg v. Toombs*, 2022 WL 954739, at *8 (E.D.N.Y. Mar. 30, 2022) (citing *Irizarry*, 722 F.3d at 104).

Here, in addition to a lack of employment records, Plaintiff Aguilar fails to satisfy all of the other *economic realities* test factors, which points against finding that Defendant Kim employed Plaintiff Aguilar. *See, e.g., Kaplan v. Wings of Hope Residence, Inc.*, 2018 WL 6437069, at *10 (E.D.N.Y Dec. 7, 2018) (dismissing Plaintiff's FLSA claims where non-maintenance of employment records contributed, along with failure to meet other *economic realities* test factors, to the finding that defendants did not qualify as plaintiff's employer); *Stewart v. Hudson Hall LLC*, No. 20 Civ. 885, 2020 WL 8732875, at *6 (S.D.N.Y. Oct. 19, 2020) (finding that defendants did not qualify as plaintiff's employer where plaintiff failed to offer non-conclusory allegations that defendants had power to hire plaintiff, supervised work schedules, or maintained employment records).

In sum, the aforementioned factual allegations are insufficient under the *economic realities* test to deem Defendant Kim as Plaintiff Aguilar's employer. Accordingly, the Court dismisses Plaintiff Aguilar's FLSA claim against Defendant Kim without prejudice.

B. Defendant Dairydel

1. *Plaintiff Aguilar fails to establish Dairydel as his employer under the single-integrated-enterprise test*

In the context of affiliated entities within a corporate family, courts in this District have applied the single-integrated-enterprise test. *See, e.g.*, *In re Domino's Pizza Inc.*, No. 16 Civ. 6274 (AJN), 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018) (acknowledging availability of single-integrated-enterprise test under the FLSA); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 368 n.3 (S.D.N.Y. 2014) (applying single-integrated-enterprise test, while noting that defendants never challenged the application of the test); *Lopez v. Pio Pio NYC, Inc.*, No. 13 Civ. 440 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) ("[T]he shared policy concerns underlying the ... doctrine and the FLSA urge the theory's application to FLSA claims.") (internal quotation marks

and citations omitted). Under this test, courts consider the following factors: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Chen v. TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).

Entities that are nominally separate have been found to form a "single integrated enterprise," where, for example, these entities belonged to a single restaurant chain, employed identical decor, menus, and uniforms, enforced uniform policies for their employees, and utilized a single manager for employee payment and supervision. *Juarez*, 29 F.Supp.3d at 368. Likewise, allegations provided sufficient grounds to support proceedings against multiple corporate defendants based on the concept of a "single integrated enterprise" where multiple restaurants shared a website, promoted themselves as a singular entity, used a centralized office for payroll processing, moved employees and food across different locations, and used a shared supervisor. *Bravo v. Established Burger One LLC*, No. 12-cv-9044, 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013).

Conversely, courts have determined that allegations were inadequate to establish the existence of a single integrated enterprise, where, despite claims of common ownership, the presented pleadings did not include specific and detailed allegations regarding the interrelation of operations or centralized control of labor relations. *See, e.g.*, *Apolinar v. R.J. 49 Rest., LLC*, No. 15-cv-8655, 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016) (finding assertions that several restaurant chain locations were listed on the same website and had identical menus insufficient to allege the existence of a single integrated enterprise, absent any allegations of centralized control); *see also Lopez v. Acme Am. Envtl. Co., Inc.*, No. 12-cv-511, 2012 WL 6062501, at *5 (S.D.N.Y.

Dec. 6, 2012) (finding corporate defendants' allegations of common ownership, without evidence of formal control over plaintiff-employees, insufficient to impose liability).

In the present case, as in *Lopez and Apolinar*, Plaintiff Aguilar has not offered sufficient allegations, free of conclusory form, that Defendant Dairydel was part of a centrally controlled enterprise. Plaintiff principally relies on conclusory language—without factual support—alleging that: Defendant Dairydel, in tandem with other entities named in this action, (1) "employed or jointly employed" the Plaintiffs; (2) held "a common or overlapping management" system; and (3) thus operated as a "single integrated enterprise for purposes of the FLSA/NYLL." (Compl. ¶¶ 27–30.)

Beyond these conclusory allegations, Plaintiff alleges that Defendant Dairydel, alongside others, held "the same pay practices, policies, and procedures, and/or payroll systems" for compensating their employees. (Compl. ¶ 29.) These assertions fail to establish that Defendant Dairydel and other entities possessed centralized control over labor relations or an interrelation of operations, let alone any economic control over Plaintiff Aguilar. While Plaintiff Aguilar alleges common payment policies, he fails, unlike in *Juarez* and *Bravo*, to allege that employees of Dairydel and other entities were paid by the same individuals. By merely referencing Dairydel and other entities' "restaurant businesses," the Court further cannot infer that Dairydel and others belonged to a single restaurant chain. *See, e.g., Santana v. Fishlegs LLC*, No. 13 Civ. 01628(LGS), 2013 WL 5951438, at **3, 8 (S.D.N.Y Nov. 7, 2013) (dismissing claim on account of insufficient allegations that multiple restaurants were a single integrated enterprise); *see, c.f., Juarez,* 29 F.Supp.3d at 367–68 (finding that four diners operated as a single integrated enterprise where a single individual owned, managed and oversaw operations at all of the diners). The Court also cannot make the inference, without any supporting allegations, that Dairydel and other entities

employed identical decor, menus, and uniforms, enforced uniform policies for their employees, and utilized a single manager for employee payment and supervision. *See, c.f.*, *Juarez*, 29 F.Supp.3d at 368.

Because the Complaint does not adequately allege that Dairydel and other entities constituted a single integrated enterprise, and further fails to allege that Dairydel functioned as Plaintiff Aguilar's employer, the motion to dismiss Plaintiff Aguilar's federal claim is granted as to Dairydel without prejudice. [4]

### III. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims

As all of Plaintiff's federal claims against the Moving Defendants fail, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Moving Defendants because there remains no independent jurisdictional basis.[5] "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). Additionally, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally

---

[4] Plaintiff Aguilar also alleges, in a conclusory manner, that all Defendants, including Dairydel and Defendant Kim (1) failed to keep accurate payroll records under the FLSA and (2) failed to post notices relating to minimum and overtime wage under the FLSA and NYLL. (*See* Compl. ¶¶ 107–111.)  Even if the Court were to consider these stray assertions, which lack clear connection to any of the Complaint's specific causes of action, they would still be deemed conclusory and thus fail. Nor does Plaintiff Aguilar explain how each of these allegations demonstrate a violation under the FLSA.

[5] On that same basis, the Court additionally need not address Plaintiff's arguments on abstention under *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano*, 274 F.3d at 754; *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991).

## CONCLUSION

For the foregoing reasons, Defendants New Dairydel, Inc. and Myeong Gu Kim's Motion to Dismiss Plaintiffs' claims for: (1) violation of the overtime provision of the Fair Labor Standards Act ("FLSA"); (2) violation of the overtime provision of New York Labor Law ("NYLL"); (3) violation of the spread of hours provision of NYLL; (4) violation of the notice and recordkeeping provision of NYLL; and (5) violation of the wage statement provision of NYLL is GRANTED.

As Plaintiffs' Complaint was the first complaint for which motion practice occurred, Plaintiffs foregoing claims are deemed dismissed without prejudice and Plaintiffs are granted leave to file an Amended Complaint. Plaintiffs will have until October 2, 2023 to do so, consistent with this Order. Plaintiffs are advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims they wish to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiffs file an Amended Complaint, all Defendants in this action are directed to answer or otherwise respond by October 23, 2023.

However, if Plaintiffs fail to file an Amended Complaint within the time allowed, those claims that are dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 27.

Dated: September 8, 2023　　　　　　　　　　　　　　　　　　　　SO ORDERED,
　　　　White Plains, NY

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Nelson S. Román
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court, SDNY